UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| DIEGO ALEXIS OBREGON | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 5:17-CV-30 |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Defendant. | | |

## ORDER

Defendant moves for summary judgment on Plaintiff Diego Alexis Obregon's claims under the Federal Tort Claims Act (FTCA) for damages arising from a car accident with a Border Patrol (BP) agent. (Dkt. No. 16). The Court has carefully reviewed all the pleadings including Plaintiff's response and hereby **GRANTS** Defendant's Motion for Summary Judgment (Dkt. No. 16).

I. BACKGROUND

On June 7, 2015, BP Agent Robert Garcia offered to pick up coffee for himself and two co-workers. (Dkt. No. 16-2 at 9, 11). He drove his government-issued Ford F-150 to the closest convenience store on Mines Road. (Dkt. No. 16-3 at 1–2). Agent Garcia bought the coffee, put the lidded cups into a carrier, and placed it on the floorboard between the two front seats. (Dkt. No. 16-2 at 11). The well-lit convenience store stood like an island of light in the otherwise lightless landscape. Agent Garcia knew this part of Mines Road well. It had no street lights and that moonless night, the darkness was palpable. (Dkt. Nos. 16-2 at 22; Dkt. No. 18 at 7 n.6).

Agent Garcia left the convenience store and drove about five miles when a small,

red sedan shot onto the highway from a sideroad. (Dkt. No. 16-2 at 12–14). The sideroad connected a subdivision to Mines Road, and a stop sign stood at the intersection to yield the right of way to those already navigating Mines Road. (Dkt. No. 16-5 at 4). Agent Garcia had only a split second to react and T-boned Plaintiff's car at approximately 70 miles per hour—the speed limit on Mines Road. (Dkt. No. 16-2 at 13). Once Agent Garcia gathered himself, he walked over to Plaintiff's car to check on him. (*Id.*). Plaintiff was unconscious but had a pulse; Agent Garcia rushed back to his car to get help. (*Id.* at 15). His BP dispatch radio would not work, so Agent Garcia grabbed his cellphone, called 911, and told them to send an ambulance. (*Id.*).[1] He also attempted to turn on the red-and-blue lights on his back windshield to warn other travelers of the wreck. (*Id.* at 16).

Shortly after Agent Garcia called 911, another BP agent serendipitously arrived at the scene, and Defendant was able to radio his supervisor. (Dkt. No. 16-2 at 18). An ambulance arrived and carried Plaintiff, now conscious but disoriented, away on a stretcher. (Dkt. Nos. 16-2 at 19–20; 16-6 at 4). Agent Garcia's supervisor arrived and took photos of the scene, clearly showing that the taillights, emergency lights, and the one headlight that partially survived the crash were all on. (Dkt. Nos. 18-1 at 4–5; 18-2 at 2–7). After the ambulance, BP agents, Laredo Police Department (LPD) initial response officers, and Defendant's supervisor arrived but before the LPD investigators

---

[1] Agent Garcia's phone records show that he made one call to 911 and log the call as lasting two minutes and twenty-six seconds, though the 911-call records state that it lasted only one minute and seven seconds. (*Id.* at 15; Dkt. No. 18-4 at 12).

arrived, a group of civilians gathered to observe the commotion. (Dkt. Nos. 16-2 at 18–21; 18-1 at 3). One woman saw neither the taillights nor emergency lights on while she was there. (Dkt. Nos. 17-1 at 1).

LPD Crash Team investigators arrived around an hour-and-a-half after the crash occurred, were briefed by LPD officers already on the scene and made a full report. (Dkt. Nos. 16-5 at 1–4; 16-6 at 3).[2] They snapped pictures, took statements, and created a diagram. (Dkt. Nos. 16-5 at 4; 16-6 at 3–5; 17-2). The photographs reveal the taillights and the one dangling headlight still shining, but the emergency lights were no longer on. (Dkt. No. 17-2 at 2, 4–10, 15–16). The investigators found Plaintiff's cellphone open to the GPS application showing Plaintiff's location at the time of the wreck and discovered that Plaintiff had been dropping off his co-worker. (Dkt. No. 16-6 at 3–4). Plaintiff usually only drove between his home, work, and school and was unfamiliar with the area as he had only been there once or twice before. (Dkt. No. 16-7 at 14–16). Investigators also learned that the sixteen-year-old Plaintiff had just purchased the car, did not have a driver's license, and had not taken any driver's education courses. (Dkt. Nos. 16-6 at 4; 16-7 at 5). Plaintiff cannot remember the accident or whether he stopped at the stop sign but does believe he is a careful driver that he habitually stops at stop signs. (Dkt. No. 16-7 at 17–18). LPD investigators concluded that Plaintiff "failed to yield . . . [at the] stop sign thus colliding with [Agent Garcia]," which the agent's account

---

[2] When LPD officers do not know the exact time of an accident, they list the time the accident was discovered as the crash time. (Dkt. No. 18 at 6). The Accident Report thus records the wreck as occurring at 11:44 p.m., right after Defendant called and reported the crash. (Dkt. No. 16-5 at 2).

3

corroborates. (Dkt. Nos. 16-3 at 3; 16-5 at 3).[3]

## II. LEGAL STANDARD

Summary judgment is appropriate if the moving party has shown that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009). The dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All evidence is viewed in the light most favorable to the nonmovant. *Miller v. Metrocare Servs.*, 809 F.3d 827, 832 (5th Cir. 2016).

When the movant would not bear the burden of proof at trial on a particular claim, he meets his initial burden on summary judgment if he identifies an element of the claim for which the nonmovant has produced no evidence. *See Skotak v. Tenneco*

---

[3] This information comes from a police report created by specially-trained investigators. The relevant part of the report itself may be admissible as a public record under Rule 803(A)(iii)&(B). *See Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 169–70 (1988) (holding that in a civil case an investigatory report, or a portion of it, is admissible even if it includes opinions and conclusions). The report would be admitted absent a positive showing of untrustworthiness by its opponent even if the report and its conclusions were made based in part on hearsay evidence. *See Moss v. Ole S. Real Estate, Inc.*, 933 F.2d 1300, 1309–10 (5th Cir. 1991) ("[The] investigators relied on hearsay evidence[, which is a] common occurrence[] in difficult investigations and do[es] not mean that the preparation of the report was untrustworthy. . . . [M]any government reports, as with many expert witnesses, have to rely in part on hearsay evidence, and the reports are not generally excluded for this reason."). Even if the report itself is inadmissible, much of the information, including the investigator's conclusions, could come in at trial through the investigator's testimony. Because the information could at the very least come in at trial through the investigator's testimony, the information can be considered for a summary judgment motion. *See LSR Consulting, LLC v. Wells Fargo Bank, N.A.*, 835 F.3d 530, 534 (5th Cir. 2016) ("At the summary judgment stage, materials cited to support or dispute a fact need only be *capable* of being 'presented in a form that would be admissible in evidence.'" (quoting FED. R. CIV. P. 56(c)(2))).

*Resins, Inc.*, 953 F.2d 909, 913 (5th Cir. 1992). The party need not negate the other party's claims. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Once the movant has met his initial burden, the burden then shifts to the nonmovant to come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elect. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis omitted).

Although the court draws all reasonable inferences in favor of the nonmovant, the nonmovant "cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)). Conjecture and speculation do not satisfy the nonmovant's burden. *Little*, 37 F.3d at 1079.

### III. ANALYSIS

The FTCA is the exclusive remedy for tort claims against the United States or its agencies because it waives the normally applicable sovereign immunity of the United States for the tortious conduct "of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant." 28 U.S.C. §§ 1346(b)(1), 2679; *see also Richards v. United States*, 369 U.S. 1, 2–3 (1962). Persons harmed by government employees' conduct may bring an action against the United States under the law of the state where the conduct occurred. 28 U.S.C. § 1346(b)(1); *see Molzof v. United States*, 502 U.S. 301, 305 (1992) ("[T]he extent of the United States' liability under the FTCA is generally determined by reference to state law." (citations omitted)). Because Plaintiff

claims negligence and neither party disputes that Defendant was acting within the scope of his employment at the time of the accident, the relevant law is Texas negligence law.

### A. Prima Facie Case for Negligence

To prevail on a claim of negligence under Texas law a plaintiff must prove four elements by a preponderance of the evidence: (1) the defendant owed the plaintiff a legal duty; (2) the defendant breached that duty; (3) the defendant's breach proximately caused the plaintiff's injury; and (4) damages. *See Gutierrez v. Excel Corp.*, 106 F.3d 683, 687 (5th Cir. 1997) (citation omitted); *W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005). Both parties agree that each owed a duty to other drivers and that Plaintiff suffered at least some damages. (Dkt. Nos. 16 at 12; 17 at 13). The Court now assesses whether a reasonable jury could find breach and causation by a preponderance of the evidence presented, viewing that evidence in the light most favorable to Plaintiff.

Texas drivers have a "general duty to exercise ordinary care to avoid a foreseeable risk of harm to others," *Williamson Cty. v. Voss*, 284 S.W.3d 897, 902 (Tex. App.—Austin 2009, no pet.) (citations omitted),[4] which includes the general duty to keep a proper lookout, *see Montes v. Pendergrass*, 61 S.W.3d 505, 509 (Tex. App.—San Antonio 2001, no pet.) (citations omitted).[5] Statutes "requir[ing] a driver to proceed safely [also]

---

[4] *See also Adams v. Morris*, 584 S.W.2d 712, 716 (Tex. Civ. App.—Tyler 1979, no writ) (driver of motor vehicle has a duty to exercise "the care a reasonably prudent person would exercise under like circumstances"); *Tex. Dep't of Transp. v. Pate*, 170 S.W.3d 840, 847 (Tex. App.—Texarkana 2005, pet. denied) (referencing motorists' "general duty to drive safely").

[5] "The duty to keep a proper lookout encompasses the duty to observe, in a careful and intelligent manner, traffic and the general situation in the vicinity, including speed and proximity of other vehicles as well as rules of the road and common experience." *Carney v. Roberts Inv. Co.*, 837 S.W.2d 206, 210

6

impose[] on the driver a duty of reasonable care." *Benavente v. Granger*, 312 S.W.3d 745, 749 (Tex. App.–Houston [1st Dist.] 2009, no pet.) (citations omitted)). Motorists thus also have specific duties to drive at reasonable and prudent speeds, Tex. Transp. Code Ann. § 545.351(a) (West), to turn their headlights on at night, *id.* § 547.302, and to stop and yield the right of way at a stop sign, *id.* §§ 544.010, 545.151. When an individual fails to exercise reasonable care or comply with specific rules, that person has breached his or her duty.

Plaintiff argues that Agent Garcia breached his duty of care in two ways: by talking on his cellphone and driving without headlights. (Dkt. No. 17 at 6–9). Regarding the cellphone call, Plaintiff points to phone records showing that Defendant made a phone call to 911 at 11:42 p.m., and the police report stating the accident occurred at 11:44 p.m. (Dkt. Nos. 16-5 at 2; 18-4 at 12). He also notes a discrepancy in the call length, with AT&T recording it as two minutes and twenty-six seconds and the 911-call records as one minute and seven seconds. (Dkt. No. 17 at 9). It defies logic that Defendant would have called 911 *before* the accident happened, and the seeming mismatch between the call time and the reported time of the accident has a straightforward explanation: LPD officers listed the time of the accident as the time that they discovered it, necessarily after the phone call that summoned them to the scene. (Dkt. No. 18 at 6). Neither does the discrepancy in the call-length records bolster Plaintiff's argument that Agent Garcia was talking on his cellphone prior to the crash;

---

(Tex. App.—Tyler 1992, writ denied) (citation omitted).

the only call made was to 911. No reasonable juror could find that Defendant was on his cellphone prior to the wreck based on his 911-call at 11:42p.m.to report the collision.

The only other evidence Plaintiff provides concerning breach is the statement from the woman who arrived at the scene after the wreck that "the taillights of th[e] BP vehicle were not on. Both taillights were off. . . . Also, there were no emergency lights on for the BP government vehicle," (Dkt. No. 17-1), and some pictures taken by LPD investigators showing no emergency lights turned on in the vehicle, (Dkt. No. 17-2 at 12). Plaintiff says the statement about emergency lights calls into question Agent Garcia's credibility, given that he stated he turned the emergency lights on after the wreck and could not remember turning them off. (Dkt. Nos. 17 at 8; 17-4 at 14). However, the pictures taken by Agent Garcia's supervisor, sometime before the LPD investigators arrived, show the emergency lights shining. (Dkt. No. 18-2 at 3). Though LPD investigators' pictures do show that around an hour-and-a-half after the accident the emergency lights had been turned off, they also show the taillights on and, most importantly, the one headlight that survived the crash dangling from its socket but still glowing and casting a pool of light on the asphalt. (Dkt. No. 17-2 at 10, 15–16). No reasonable juror could conclude that Defendant drove five miles down a pitch-black road and consciously chose not to turn on his headlights—at least not on the evidence adduced by Plaintiff. (Dkt. Nos. 16-2 at 22; Dkt. No. 18 at 7 n.6).

Because no reasonable juror could find that Defendant breached his duty of care, Plaintiff has failed to make the requisite showing on a necessary element of his prima facie case. Plaintiff therefore cannot survive summary judgment.

## B. Comparative or Contributory Negligence

Even if Plaintiff could make the requisite showing as to all the elements on which he would bear the burden of proof at trial, Texas has adopted comparative-liability law. That means a plaintiff's own negligence bars recovery against another if the plaintiff is more than fifty-percent responsible for the accident, Tex. Civ. Prac. & Rem. Code Ann. § 33.001 (West), and lessens the defendant's liability if the plaintiff is less than fifty-percent responsible, *id.* at § 33.012(a). Comparative fault is an affirmative defense, *Austin v. Kroger Tex., L.P.*, 465 S.W.3d 193, 211 (Tex. 2015), so to bar the plaintiff's recovery, a defendant must prove by a preponderance of the evidence that the plaintiff was negligent and that the plaintiff's negligence was the proximate cause of the plaintiff's injuries, *see Brown v. Edwards Transfer Co., Inc.*, 764 S.W.2d 220, 223 (Tex. 1988). Because the defendant would bear the burden of proof at trial, at the summary-judgment stage the plaintiff need only point to an absence of evidence supporting the defendant's claim of comparative fault. *See Skotak*, 953 F.2d at 912–13. If the plaintiff carries his burden, then the defendant must come forward with specific "evidence sufficient to support a finding that [the plaintiff] was contributorily negligent." *Transco Leasing Corp. v. United States*, 896 F.2d 1435, 1447 (5th Cir. 1990). That standard "mirrors the standard for a directed verdict . . . which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (citing *Brady v. S. Ry. Co.*, 320 U.S. 476, 479–80 (1943)).

Defendant argues that Plaintiff breached his duty of care by running the stop

9

sign and driving without a license. (Dkt. No. 16 at 13–15). Plaintiff affirmatively admits that he was driving without a license or any formal training, (Dkt. No. 16-7 at 5), and the only reasonable conclusion about the stop sign is that Plaintiff ran it. Importantly, investigators also concluded based on the manner of the accident that Plaintiff ran the stop sign. Agent Garcia consistently told people that Plaintiff ran the stop sign, both immediately afterward and months later. And Plaintiff was using his cellphone's GPS application because he was unfamiliar with that area. (Dkt. Nos. 16-3 at 3; 16-4; 16-5 at 3; 18-1 at 4). Unfortunately for Plaintiff there is no evidence to the contrary. Although Plaintiff asserts that he had a habit of stopping at stop signs, he could not say whether he stopped at the one that night. (Dkt. No. 16-7 at 18). Even viewing the evidence in the light most favorable to Plaintiff, the only reasonable conclusion is that he breached his duty of care by running the stop sign. The next question is whether that breach proximately caused the accident.

Under Texas law, proximate cause requires both cause-in-fact and foreseeability. *Travis v. City of Mesquite*, 830 S.W.2d 94, 98 (Tex. 1992) (citation omitted). Proximate cause is generally a question of fact. But it becomes a question of law when only one reasonable inference may be drawn from the evidence. *See Ryder Integrated Logistics, Inc. v. Fayette Cty*, 453 S.W.3d 922, 929 (Tex. 2015) (citations omitted). The evidence need not be direct; proximate cause may be inferred from the circumstances surrounding an event. *See Havner v. E-Z Mart Stores, Inc.*, 825 S.W.2d 456, 459 (Tex. 1992). Cause-in-fact is established if "the act or omission was a substantial factor in causing the injury without which the harm would not have occurred." *W. Invs.*, 162 S.W.3d at 551 (citation

omitted). It does not require that the defendant's act was the sole cause of the plaintiff's injury. *Havner*, 825 S.W.2d at 459 (citation omitted). Foreseeability is judged based on "common experience applied to human conduct," and an injury is foreseeable if it could have reasonably been anticipated. *Doe v. Boys Clubs of Greater Dall., Inc.*, 907 S.W.2d 472, 478 (Tex. 1995) (quoting *City of Gladewater v. Pike*, 727 S.W.2d 514, 518 (Tex. 1987)).

The only reasonable conclusion based on the evidence provided is that Plaintiff's disregard of the stop sign was a substantial, but-for cause of his own injuries. The investigators concluded that the Plaintiff running the stop sign caused the wreck. (Dkt. No. 16-5 at 3). Agent Garcia hit him at around 70 mph, the speed limit, because he had only a split second to react. (Dkt. No. 16-2 at 13). The record is utterly devoid of any evidence of any other cause. Such an accident was also a foreseeable result of running a stop sign. Stop signs are placed specifically to forestall accidents such as this one. When pulling out of a neighborhood subdivision onto a highway with a 70mph speed limit, common experience teaches that disregarding a stop sign could lead to a car on the highway going the speed limit being unable to stop or avoid hitting the entering vehicle. Because Plaintiff running the stop sign was both the accident's cause-in-fact and the injury was a foreseeable consequence of it, running the stop sign was the proximate cause of Plaintiff's injuries.

Because Plaintiff breached his duty of care by running a stop sign, without Agent Garcia breaching his duty of care, Plaintiff is more than fifty-percent responsible for the wreck. Plaintiff thus cannot recover under Texas comparative liability law.

11

## IV. Conclusion

For the forgoing reasons, the Defendant's Motion for Summary Judgment (Dkt. No. 16) is **GRANTED**, and all of Plaintiff's claims against Defendant are **DISMISSED WITH PREJUDICE**. Final Judgment in favor of Defendant will accompany this Order.

It is so **ORDERED**.

**SIGNED** November 27, 2018.

_____
Marina Garcia Marmolejo
United States District Judge